Thank you, Your Honor. Good morning, and may it please the Court. My name is Brad Banas. I represent the appellant, Arbor Home, LLC. With your permission, I'll reserve three minutes for rebuttal. The agency relied on a legislative rule unknown to the statute of regulation to deny my client's non-immigrant visa application. As such, the denial is unlawful. It should be set aside, and this Court should remand with instructions to approve the non-immigrant visa. This case comes down to one question, thanks to the agency's very wise concessions. They've conceded that this is, in fact, the legislative rule and that if it's in the regulation somewhere, then we lose and they win. However, it is unknown to the regulation. The totality criterion, or a two-step analysis, is nowhere in the regulation that was passed in 1994 promulgated. So is it your position that evidence of any of the three criteria that satisfies the first step, everybody who satisfies any of the three in any way win? Yes, Your Honor. Okay. So how is that, to me, even remotely consistent with this being, I don't know, is it sometimes colloquially referred to as the Nobel Prize visa? So, Your Honor, the Nobel Prize visa is the immigrant visa, the EB-1A. But this is this extraordinary ability visa, and what you're saying is you've published one article, you have been in a critical capacity, and you've been on a panel. You automatically get the visa. Your Honor, I think that the quality of that evidence absolutely should be assessed. If you're on a panel at my kid's elementary school, that's one thing, but if you're on a panel at Harvard, that's another, Your Honor. Although what it says is evidence of the alien's participation on a panel as a judge of work of others in the same or allied field of specialization. It doesn't say it has to be a great panel, and the way it sounds like you're reading it is we would read into that more than is written, as opposed to this qualifies you to get to a totality analysis. Somebody would be reading more into this than was written. Your Honor, I think that if the actual text of the regulation here belies or takes care of that concern, Your Honor, the actual regulation here that the agency doesn't cite in its brief says the evidentiary criteria for an alien of extraordinary ability in the field of science, business, blah, blah, blah. An alien of extraordinary ability in the field of business must demonstrate sustained national or international acclaim and recognition of achievement in the field of expertise by providing evidence of, and that's setting the context for those regulatory criteria. And it's arbitrary and legislative for the government to say that in order to determine sustained national or international acclaim, et cetera, we're going to look at the totality of the evidence. Your Honor, I think that they have to follow the regulation. They've interpreted this statute, and the way they've done it is they've set up the paradigm that you're criticizing right now, Your Honor. There is no regulation in there that says go back and look at the totality of the circumstances. Could they promulgate that regulation today? That's up to them, Your Honor. So your position is the mere presentation of evidence forecloses the agency denial? The presentation of ---- Regardless of how weighty the evidence is, simply evidence that is admissible carries the day. No, Your Honor. Again, I think that you weigh the evidence inside of those criteria, and they have ample ability to interpret those regulations. Agencies interpret their own regulations all the time. What is not permitted is to create a new criterion separate from those regulatory criteria, and that's what they've done here. Well, how is the regulation that they have, quote, created different from weighing the evidence that you admit should happen? Your Honor, I think it's very different because what they've done here is they've essentially, in this case, a great example. It was denied originally by saying you didn't meet the three criteria, right? They sued. The agency reopened. They said, sure, you satisfied three, but you didn't get this other thing that's not in the regulation, and it provides them an unaccountable way to deny applications. What is this other thing that you're referring to? That's this totality of the circumstances analysis that's nowhere in the statute or regulation, Your Honor. So you can present the evidence, and then once presented, the agency must accept it? No, Your Honor. Then how can it weigh the evidence as to its weight and validity without considering the circumstances? I think they can do that inside the confines of the regulatory criteria. Which is to accept the importance of the evidence because it's presented? No, Your Honor. I think there's a distinct difference in between a panel at Harvard and a panel at an elementary school, and I think that if you show an elementary school— Isn't that one of the circumstances that makes up the totality? Well, Your Honor, I think that's one of the regulatory criteria. I'm sorry. Maybe we have the same question. I can't understand what you're saying, the difference between Harvard and an elementary school. Why isn't looking at the totality of the circumstances? I don't understand the distinction you're making. Your Honor, it's very distinct, I believe, because the way that you get to—the problem is seen here, Your Honor. How do you judge the totality of the circumstances here? They didn't even look at the totality here. They went through individual by individual by individual and said, well, that's not sufficient. And they created a second part of this test that's unknown. And I understand it seems like the court's concern is that why does this even matter? They can do the same thing and not call it the totality of the circumstances. And I don't disagree with you. But if they want to create a new eligibility criteria and deny companies in the U.S., the CEOs they need to operate, then they've got to go through the process. The APA is not a suggestion. It's a law. And if they want to do this, they can try to interpret the statute and the regulation to promulgate something new. Counsel, I'm having, I think, the same problem that is evident in Judge Bea and Judge Thomas' question. What the agency said when they decided they'd been wrong about one of the criteria, they said, however, when considered together, the evidence of record does not establish the beneficiary's eligibility. It's largely not responsive to the issue of the beneficiary's national or international acclaim and doesn't contextualize his ability within his fields of endeavor. There's one more that shows he's one of the small category that this visa covers. So you're saying, if I understand you correctly, they could have said the same thing about the individual three that he said he qualified for and said we're not going to count this one because and then said the same thing? I think so, Your Honor. I think they could have said, okay, we're looking at articles. Let's use articles as an example. You've provided five articles that are in prominent journals, but they're from 2005, and you filed in 2015. That doesn't indicate a sustained acclaim. So they could have said the exact same thing and said, you don't have three because we're rejecting one of these for the exact same reason, but they can't say you meet the words of the reg, but in a totality, this doesn't show that you are one of the very small number of people that were intended by Congress to get this extraordinary ability visa. That's right, Your Honor. And I understand you're making it sound like that's no difference, but I think it is. Looking at someone as a whole is different than looking at the individual parts. And when the regulated community is instructed by the regulation by provide evidence of, that's what it takes to show under the regulation sustained and international acclaim. You go bit by bit. You don't do the whole uniform world. Didn't your client quote the totality of the evidence standard in its initial submission to USCIS? I mean, I'm looking at ER 45, and it states, in adjudicating the application pursuant to the preponderance of the evidence standard, the director must examine each piece of evidence for relevance, probative value, and credibility, both individually and within the context of the totality of the evidence. So I guess why cite that standard if you don't believe it applies? Two reasons, Your Honor. I mean, I think that's a basic standard from a matter of chow ways. It's a case from 2010 that just says you look at the evidence in context. And secondly, a petition attorney's job is to do whatever the agency tells it to do, get an approval, whether it's lawful or not. And so there are lots of regulatory criteria that petition attorneys file and seek under, but that's a different question of whether the agency can actually demand and promulgate a brand-new binding rule without going through the APA, Your Honor. And it's just a difference in practice. I mean, the fact is here, there is no reference to this two-step analysis, the way they do it, in this regulation. It's not in the statute. When you go back and look at the rulemaking from 1994, which it appears the government relies heavily on, it simply says that the standard for the evidence is not the standard for the classification, but it's the mechanism to establish whether the standard has been met. This is all we're supposed to do. And I do think it's a mistake to see as analog the EB-1A. An EB-1A is completely different. Yes, it's also called an extraordinary alien visa, but it is an immigrant visa. It has different interests, different concerns. You know, an immigrant or, excuse me, an EB-1A can be a self-petition. Someone can just file for themselves. This requires an employer or an agent, right? It is a lesser standard. You're getting something different. And to just call those analogs and say they should have all the same standards is incorrect. And that's your argument as to why we should not follow or rely on Kazarian? That's right, Your Honor. Kazarian, it interprets different regulations. It interprets a different statute. And this is a question of interpretation. Does the regulation give the regulated community notice in a proper way that they're going to do a two-step analysis? And it simply doesn't. And when the agency does that, they promulgate a legislative rule in an unlawful way. And that's what's happened here. And I think the concerns of this court are very valid that if we remand this, could they just rewrite the decision to deny? I guess they could, but that's always the case in an APA case. And that's what the lesson we learned from the Board of Regents of California versus DHS in the DACA case, right, where Justice Kavanaugh's concurrence or dissent basically said, well, why are we even doing this? We're just sending it back. We know what's going to happen. And Justice Roberts said, no, that's what we have to do. The APA is the law. Remanding it is important and letting the agency do what it needs to do in the first instance. And with that, I will let my colleague take over. Thank you, Your Honors. Thank you, Your Honors. Josh from the press here on behalf of the Department of Justice representing the defendants and appellees. I'd like to start with this case below was presented as a challenge to an agency adjudication. There was no mention of rulemaking at all by the plaintiffs. That is why, Judge Thomas, when you were reciting to ER 45, the counsel for the plaintiff at that time was reciting, not just the preponderance of the evidence standard from an agency panel. I think that was a matter of trial, I think, that he was referring to. It was giving its understanding of how the agency was supposed to proceed to the evidence and then make the totality assessment at the end or what this court in Kazarian referred to as a final merits determination because it had been understood, as opposing counsel had mentioned, since 1994 in the Federal Register, that the evidence itself is not sufficient alone. And so I think a lot of what's gone on before this court has been confusion of necessity for sufficiency. The evidence is the mechanism, and this is articulated in the Federal Register from 1994, the evidence is the mechanism that the adjudicator will make the overarching holistic assessment, whether someone truly has sustained national or international acclaim. That is critical for both the EB1A category, which is, Judge Bennett, I think you're referring to as a Nobel Prize visa. I think Judge Costa, when he was with the Fifth Circuit in Amin last year, referred to it as the Einstein visa. His opinion talked about the Einstein visa versus Lake Wobegon. Exactly. And, you know, I remember listening to that, about that on the radio. A lot of people in a lot of these cases, both EB1A and O1A or O1B cases, everyone is very good. They're not, there's no one who is not usually exceptional. But I think as this court in Kazarian recognized, there is a distinction between extraordinary and exceptional. And the whole reason that the O1A category, the O1 visa was created in 1990 by Congress was because of the, precisely the problem that we have in this case, that what the plaintiffs are trying to do in this case is, again, diminish the importance of the O1A category from the EB1A category, diminish what is extraordinary for both. I mean, opposing counsel said specifically it's different if someone's trying to go to Harvard versus teach at a different, a lower, lesser school or high school or something like that. With respect, that is 180 degrees from what Congress actually wanted. I will quote from the House report in 1990 that came with the bill. It says specifically on page 69, this is House Report 101723, September 19, 1990. The bill's definition of aliens of extraordinary ability requires sustained national or international acclaim. This definition is identical to that of the comparable category of priority workers for permanent immigration, period, full stop. That is the end of that argument, that these should be different in any way. It makes no sense to assess the same definition differently for O1A or for O1 visas versus EB1 visas. This court outlined a process that had been followed, generally speaking, by adjudicators prior to Kazarian. I think that came out in 2010, but not uniformly. Shortly after that, the agency looked at Kazarian and thought, unsurprisingly, this court got it right. We'd like to do this. We'd like to go through the criteria, through the evidence, and then have the adjudicators with the ability and the discretion to sort of make the holistic determination as to whether someone actually has sustained national or international acclaim. The reason why I think that's important, that two-step process is important, because if you actually look at the statute, not just the regulations in this case, but the statute itself, I think it's 8 U.S.C. 1153, Subpart A for Aliens with Extraordinary Ability. It says in Subpart 1, the alien has extraordinary ability in these sciences, arts, education, business, or athletics, which has been demonstrated by a sustained national or international acclaim, and whose achievements have been recognized in the field through extensive documentation. So there are two different things. It's the documentation. That's the latter part. But then it's the sustained national or international claim. That is the final merits determination that this court recognized was appropriate with EB1s, and it's the same definition. It should be carried over into O1. We don't think that's arbitrarily capricious. We certainly don't think it was arbitrarily capricious to do that in this adjudication, which, to be clear, was the only thing that was actually challenged below. If we were to really get into it, this entire process is laid out in a policy manual. That policy manual is open to the public. So the entire argument about how the regulated community has no idea what's going on, that's not true. And the government is saying, we want to have criteria for how you can get in the door, because we want to limit the people who can even get in the door, because this is extraordinary. But getting in the door doesn't get you the visa. It gets you consideration for the visa. Yes, and this is analogized by Judge Costa last year in a mean of, you know, there are a lot of qualified students to get into a college or university or educational programs. I mean, you know, they're usually oversubscribed with very elite universities. I think, well, anyways, that gets you in the door, as Your Honor was sort of pointing out. But that's not sufficient in itself to show that you have sustained a national or international claim. That sort of secondary step is a different holistic determination that adjudicators should be able to make. But as I understand, counsel, saying once the three steps have been accomplished by presentation of evidence, what the agency must do is rebut each of those steps or any one of them, not consider whether the evidence as a whole has weight or not. What's wrong with that argument? Well, I don't think that that actually – that's a much more mechanistic determination. And I think what actually sort of is – how that's sort of disproven by the way that this regulation is outlined is there is also a catch-all criteria or a criterion that sort of allows for if these – if you don't – if you can't fit into these boxes, that's okay. We have this whole other – Well, I think what counsel was arguing was you have three boxes to fit into. It's up to Mr. Majorca to say that the evidence in each of those boxes is infirm or not worthy of credence. And if you don't do that as to at least one or the other or the third, you haven't attacked his evidence. Well, with respect, the preamble that accompanied this regulation when it came out in 1994 did not understand it that way. Because it said specifically that these are the evidence that will get you in the door, but they are not by themselves the mechanism that the adjudicators will use to decide whether you've actually met, sustained national or international clarity. I think his point is they get you in the door, but you get to stay there unless you rebut each or some of the door-opening elements. Well, I think that also eliminates the wording – and this is referred to by Judge Costa for the Fifth Circuit last year. It says at least three of the following criteria. At least sort of says that is necessary, but that is not by itself sufficient, or at least it suggests that with the wording that's within the regulation itself. Because it's not – at least you can meet all the criteria, and if someone meets all the criteria, you know, it's likely that they do have that sustained national or international claim, perhaps not always. But that sustained national or international claim is not necessarily the same thing, and it will not always be met necessarily by meeting the criteria themselves. Those are evidence themselves. They're evidentiary categories. That's why there's a catch-all evidentiary category, but they are not by themselves recognition by an august panel in the field of endeavor or anything like that. Well, I think that what you're saying then is even if you do these three – fill these three categories, the agency can consider something other than that, other than the evidence you present. No, no, I don't think that it can consider something outside of the evidence. I mean, to be clear, the evidence that gets submitted with the petition is the universe of materials that the adjudicator should consider. And that's why I think this record, I mean, it's not – the entirety administrative record, I think, is over 1,500 pages. I mean, it is enormous. But it's quality over quantity when it comes to this sort of thing because, you know, if you look back at Kazarian, for example, I think Judge Pregerson at the time was very impressed by a Caltech professor saying, you know, I know this associate professor. He's done a really good job. It surprises me that he hasn't gotten this visa already. You know, he's really, really good as a professor, and he's very promising in this field. And Judge Pregerson was impressed by that. But if that had been from Judge Professor Feynman himself rather than the Professor Feynman chair or the Feynman chair, that could have made the difference because you're talking about at that point someone who is extremely well-known in a particular field of endeavor and can vouch for this other person. In this case, what the adjudicator had in front of them was, I mean, literal friends of the beneficiary. It doesn't make sense to just simply say, you know, they should be treated the same way as someone like Professor Feynman would have been because if we're talking about real authorities in an area, that might actually carry more weight. If we're talking about someone who knows someone else in the business community but is not necessarily as esteemed as, you know, we're in the Bay Area, so let's go with Elon Musk, that might not really carry the same weight in front of the adjudicator. So it's really at the totality assessment stage, the final merits determination stage, where the overarching weight of the evidence is weighed so that they can make a holistic assessment of sustained national or international acclaim. You know, I think that covers most of the argument in the briefing. We do think that the district court actually got it right with respect to the arguments that were in front of her a year ago. A lot of the arguments have shifted over time. I will take any questions that the panel has regarding deference because I know that that's also argued a lot. But if there are no further questions, we would ask that the district court's judgment be affirmed. All right. Thank you. Thank you. You have some time left, counsel. Thank you, honors. I'll be fast. The agency looks at EB1A and O1A differently. You can see that. It's in the regulations. The regulations for EB1A, you have to match three out of ten there. They're different. They're more stringent. They're harder. So when the agency talks about congressional intent, they're not talking about a blank slate here. They've actually used their authority to interpret these statutes and these benefits, and they've interpreted them differently. So this idea that they are the same thing is belied by the text of the regulations. The second thing is we're talking about this standard of proof, standard of proof. The standard of proof here is preponderance of the evidence. My client has to show by 51 percent, and that's it, that he is eligible under the text of the regulations. I would point you, again, to the actual text of the regulation that's in front of this court. This is essentially a Kaiser case where we interpret the text of the regulation just like we would a statute. The text structure history. The text here that the agency runs from is that it says, to show sustained national or international acclaim and recognition for achievements in the field of expertise, you do that by providing evidence of, and then it lists those regulatory criteria. It doesn't require anything else at all. It doesn't say go back and look holistically at the end. It doesn't say anything else. Could they do that? Absolutely. They could hand over a decision to the attorney general and have it marked as precedent, and they could put this new rule out there for the regulated community to have to follow in a binding way. They could promulgate a new regulation. They have the means to do this, but this idea that this has been something that's been going on since I was in elementary school is simply not in the record. If that was the case, I would expect dozens of sites from 1994 to 2010 doing this two-step analysis, but notably that's not in the record because they don't exist because this two-step analysis came after Kazarian. Kazarian is different than this because, again, the regulations are different. The history is different. The statutory language is different, but this idea that this has been going on forever is simply not the case, and if it was, this record doesn't support that, and for that reason, Your Honor, Arbor Home currently has about 15 employees. They're all over the country. The company is a vibrant tech home services company. Right now, they're moving more into providing kind of a door dash service for Lowe's and Home Depot, so if you're in the middle of a project and you need a new paintbrush, you get on your phone, you do the app, and it comes to you. This idea that this gentleman sitting at the table here is not at the forefront of his field when he's won international awards and has reached out to professional colleagues for letters, which I'm not sure how you get support in affidavits if you don't know the person, then this 01A is going to be written out of the law completely, especially from folks from countries that the agency and the executive has other bans against, and for that reason, this court should not allow the agency to create this new sword without going through the proper authorities under the Administrative Procedure Act. Thank you, Your Honors. All right. We thank counsel for their arguments, and the case just argued will be submitted.
judges: BEA, BENNETT, THOMAS